IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**PEDRO BUSTILLO-FORMOSO**,

   Plaintiff,

   v.

**MILLION AIR SAN JUAN CORP.**, *et al.*,

   Defendants.

Civil No. 14-1420 (BJM)

## OPINION AND ORDER

Pedro Bustillo-Formoso ("Bustillo") brought this action against Million Air San Juan Corp. ("Million Air") and Thomas Hill ("Hill"), in his individual capacity and as president of Million Air, alleging a violation of the Americans with Disabilities Act ("ADA"), 42 US.C. § 12101 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and three state-law provisions.[1] The parties filed cross-motions for summary judgment, Docket Nos. 81, 82, 86, 87, and opposed each other's motions. Docket Nos. 106, 109. The case is before me on consent of the parties. Docket No. 11.

For the reasons set forth below, Million Air's motion is **GRANTED**, and Bustillo's motion is **DENIED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving

---

[1] Law 44, P.R. Laws Ann. tit. 1, § 501 *et seq.*; Law 100, P.R. Laws Ann. tit. 29, § 146 *et seq.*; and Law 115, P.R. Laws Ann. tit. 29, § 194 *et seq.*

Bustillo-Formoso v. Million Air San Juan Corp. et al., Civil No. 14-1420 (BJM)                          2

party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[2] submissions.[3]

---

[2] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule

Million Air is a Puerto Rico corporation that manages privately owned airplanes and employs pilots to fly those airplanes. DSF ¶¶ 1–4. In May 2010, Million Air acquired Propilot, Inc. ("Propilot"), a Puerto Rico corporation that provided piloting services for privately owned airplanes and that has a Federal Aviation Administration ("FAA") certificate allowing charter flights. DSF ¶¶ 11, 19. Million Air took over Propilot's operations and does business with Propilot's FAA certificate to provide charter flights. DOSF ¶ 6. Hill is Million Air's President, and Jessiemar Campos ("Campos") is the company's secretary. DOSF ¶¶ 4–5. Bustillo began his employment with Propilot in 2001 and became a full-time employee in 2002. DOSF ¶¶ 7–8. Bustillo was born in 1957, and was at least 40 years old while employed by Propilot and Million Air. DOSF ¶ 7.

Since December 2009, Bustillo was assigned to fly a Gulfstream 200 ("G-200") owned by Nelson Menda ("Menda"). DOSF ¶ 13. Two pilots were assigned to fly this airplane: one served as the pilot-in-command[4] ("PIC") and the other as the second-in-command ("SIC"). DOSF ¶ 13. Bustillo was paid $68,000 per year to be the G-200's SIC. DOSF ¶¶ 13, 14. Joseph Cruz ("Cruz"), a pilot younger than Bustillo, was assigned to be the airplane's PIC. DOSF ¶ 13. Cruz and Bustillo maintained their respective positions on the G-200 when Million Air took over Propilot's operations. DSF ¶ 34; POSF ¶ 34. In March 2010, Bustillo obtained the PIC rating for the G-200 (a rating that was valid for one year), and thereafter flew as the G-200's PIC on certain occasions. DOSF ¶¶ 15–17. Million Air did not assign him to that position and did not pay him an increased salary for flying as the G-200's PIC on those occasions. DOSF ¶ 18.

---

"at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

[3] Defendants' Statement of Facts ("DSF"), Docket No. 84; Plaintiff's Statement of Facts ("PSF"), Docket No. 87; Defendants' Opposing Statement of Facts ("DOSF"), Docket No. 105; and Plaintiff's Opposing Statement of Facts ("POSF"), Docket No. 110.

[4] An FAA regulation defines "pilot in command" as "the person who: (1) Has final authority and responsibility for the operation and safety of the flight; (2) Has been designated as pilot in command before or during the flight; and (3) Holds the appropriate category, class, and type rating, if appropriate, for the conduct of the flight." 14 C.F.R. § 1.1.

In March 2011, Million Air did not send Bustillo to re-obtain the PIC rating for the G-200; instead, he was sent to re-train in an airplane, a King Air B-350 ("B-350"), that he had previously flown while working for Propilot. DSOF ¶¶ 8, 20–22. In July 2011, Hill (who was born in 1965 and is approximately eight years younger than Bustillo) received training to be the G-200's PIC. DSOF ¶¶ 24, 26. Hill claims he received that training because, as Million Air's President, he tries to receive training on all airplanes operated by Million Air. DOSF ¶ 24.

On April 23, 2012, Hill informed Bustillo that Menda was considering the possibility of selling the G-200. POSF ¶ 105. Menda sold the G-200 on May 31, 2012. DSF ¶ 106; Docket No. 105-2 at ¶ 6.[5] After the G-200 was sold, Cruz's employment with Million Air was terminated, and Million Air required Bustillo to use his accumulated vacation time until Million Air found another airplane for him to fly. DOSF ¶ 31; DSF ¶ 229 n.18; DOSF ¶ 43; Docket No. 86-3 at 5. In June and July 2012, Million Air flew the G-200 four more times before the airplane was finally delivered to an aviation broker in Georgia. POSF ¶ 108; DOSF ¶¶ 35, 36; Docket No. 105-2 at ¶¶ 9–12. The two flights in June 2012 were made by Hill and Million Air's pilot Jorge Echegoyen ("Echegoyen"), and the two flights in July 2012 were made by Hill and Million Air's pilot Carlos Santos ("Santos"). POSF ¶¶ 35–37.

With the loss of the G-200, Hill believed there was no position for Bustillo to fill because other pilots were assigned to the remaining airplanes in Million Air's fleet, because each airplane requires specific training, and because Bustillo did not have the required flight training for some of the airplanes. DSF ¶¶ 120–121. While Bustillo acknowledges that he lacked training for some of the airplanes and that some of the positions on the other airplanes were filled by other pilots, he claims Million Air could

---

[5] Bustillo contends that Million Air relies on Hill's affidavit to establish that Menda sold the airplane in May 2012, that this statement is hearsay, and that Million Air has not presented business records or an affidavit subscribed by Menda. POSF ¶¶ 106, 115. Menda's affidavit is available at Docket No. 105-2.

have sent him to another location to be re-trained. POSF ¶ 113. Million Air claims it did not do so, or conduct that training in-house, because the training was expensive. DSF ¶ 122. Ultimately, Bustillo identified no vacant position on an airplane that he could have flown with the training he had during the months of June to August 2012. *See* POSF ¶ 113. And while he claims that he was displaced by younger pilots, he admitted that he cannot "remember the alleged pilots who displaced him" or "their salaries." POSF ¶¶ 175, 176

When Bustillo returned from his vacation around September 2012, Hill assigned Bustillo to fly a Piper Cheyenne II ("Cheyenne II"), a new airplane that Million Air received that month. DSF ¶ 51; POSF ¶ 52. Bustillo was paid the salary he received for flying the G-200 until August 31, 2012, and thereafter began receiving a salary of $40,000 per year. DOSF ¶ 39. On September 18, Bustillo filed an age-discrimination charge with the Puerto Rico Antidiscrimination Unit ("ADU"). DOSF ¶ 41. In that discrimination charge, Bustillo stated that he requested compensation for damages, suffering, and "mental anguish" suffered by him and his family. Docket No 112-1 at ¶ 3. On September 21, Million Air informed Bustillo that he would be sent to Florida to receive flight training for the Cheyenne II. DOSF ¶ 59. The training was paid for by the airplane's owner, Bustillo attended the training on October 2, and Bustillo received a certificate to fly the Cheyenne II on October 5. DOSF ¶¶ 61, 62; POSF ¶ 55.

On October 6, Million Air was notified of the discrimination charge that Bustillo filed on September 18. POSF ¶ 202. Three days later, Hill prohibited Bustillo from flying until an independent medical examiner determined that he was fit to fly passengers on a commercial basis. Docket No. 112-3. In the October 9 letter, Hill stated that this action was taken because Bustillo said in the ADU discrimination charge that he had "suffered 'damages, suffering, and mental anguish'" and that such allegations were "extremely serious and worrisome for the industry in which [they] work, where [they] have to maintain at all times the safety of [the] passengers." Docket No. 112-3. Million Air

continued paying Bustillo during the time he was not permitted to fly for the company. DSF ¶ 62; POSF ¶ 62.

On October 10, Bustillo filed a charge with the ADU in which he alleged that Million Air was retaliating against him on account of the September 18 age-discrimination charge. Docket No. 112-2. On October 19, Bustillo was informed that arrangements had been made for him to meet with Dr. Victor Llado ("Dr. Llado"), an occupational and forensic psychiatrist who would conduct the independent medical examination. POSF ¶ 63. Bustillo filed another complaint with the ADU on October 23, alleging that Million Air had taken further retaliatory action by requiring him to meet with an independent medical examiner. Docket No. 112-4.

On October 24, Bustillo visited Dr. Llado and brought a letter written by Bustillo's attorney. DOSF ¶ 81. Dr. Llado refused to accept the letter, but Bustillo informed Dr. Llado of the letter's instructions: Dr. Llado was not to question Bustillo "about events having taken place at work," and no medical or psychological information was to be disclosed to Million Air. DOSF ¶ 81. Dr. Llado refused to limit his examination or otherwise abide by the attorney's instructions, and so Bustillo refused to submit to the independent medical examination. DOSF ¶ 81. After this incident, Million Air did not request a meeting with Bustillo, nor did Bustillo request one with Hill. DOSF ¶ 82.

On November 1, 2012, Hill terminated Bustillo's employment with Million Air, and cited his refusal to submit to the independent medical examination as the reason for his termination. Docket No. 112-9. Hill, who alone made the decision to terminate Bustillo, explained in Bustillo's termination letter that the owner of the Cheyenne II was ready to use the airplane, that the owner of that airplane had paid for Bustillo's training for that aircraft, and that Million Air was going to incur additional expenses to find another pilot who could fly the airplane. Docket No. 112-9; POSF ¶ 169. On November 8, Bustillo filed another complaint with the ADU. Docket No. 112-8.

When Bustillo was terminated, Million Air employed the following pilots: Hill, Juan Castellanos ("Castellanos"),[6] Hugo Capo ("Capo"), Echegoyen, Ernesto Vázquez, Santos, and Jose Febres. DSF ¶ 114; PSF ¶ 114. After Bustillo's termination, several pilots were hired: Jorge Racines was hired in December 2012 to fly a Citation Encore, Iván Ocasio was hired in October 2013 to fly a Cessna Caravan, and Roberto Molina was hired in July 2014 to fly a B-350. DSF ¶¶ 177–81. Bustillo claims other pilots were hired, but does not identify the airplanes they were hired to fly. POSF ¶ 177.

On November 29, 2012, Carlos Lopez Lay ("Lay"), president of G-200, LLC, purchased a G-200 ("G-200 II"). Lay previously told Hill that he intended to purchase a G-200, but told Hill from June to November 2012 that he was unsure whether he would actually purchase the G-200. Docket No. 105-3 ¶ 12. After Lay purchased the G-200 II, he hired Million Air to provide its piloting services. Docket No. 105-3 ¶ 15. Million Air's first flight for the G-200 II was on November 29, 2012. Docket No. 150-3 ¶ 16.

## DISCUSSION

Million Air contends it is entitled to summary judgment on all of Bustillo's claims. Docket Nos. 81, 82. Bustillo opposed Million Air's motion, and moved for an entry of summary judgment in his favor. Docket Nos. 86, 109. At the outset, I note that Bustillo's motion and opposition were quite conclusory and largely provided rule statements without applying the law to the circumstances of this case. *See* Docket Nos. 86, 109.[7]

---

[6] Bustillo claims that on *one* occasion, Castellanos said that Bustillo "is not carrying the bags" because "he's a senior citizen." DSF ¶¶ 209–12; POSF ¶¶ 209–12.

[7] As the First Circuit has repeatedly admonished, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Ledesma-Sanchez v. Lynch*, 797 F.3d 131, 134 (1st Cir. 2015) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (citation omitted)); *see also Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 609 (1st Cir. 1994) ("A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.").

**I.     ADA**

Bustillo contends Million Air violated the ADA, as it allegedly regarded him as being disabled by referring him to an independent medical examiner. He also argues that Million Air impermissibly terminated him after he asked that the medical examination be limited in the manner requested by his attorney. Docket No. 109 at 4. "To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove: (1) that she was 'disabled' within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 82–83 (1st Cir. 2008). "For purposes of the ADA, one is considered disabled if she (a) has a physical or mental impairment that substantially limits one or more of her major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment." *Id.* "The regarded as prong of the ADA exists to cover those cases in which 'myths, fears and stereotypes' affect the employer's treatment of an individual."[8] *Id.* (internal quotations omitted).

The ADA "expressly allows examinations or inquiries as to whether an employee has a disability or as to the severity of a disability, if such examinations/inquiries are job-related and consistent with business necessity." *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001) (citing 42 U.S.C. § 12112(d)(4)(A)). The Third Circuit has held that "a request for an [independent medical examination] that complies with the statutory restrictions will never, in the absence of other evidence, be sufficient to demonstrate that an employer 'regarded' the employee as substantially limited in a major life activity, simply because an examination that is 'job-related' and 'consistent with business

---

[8] I note that Bustillo does not identify the specific impairment within the meaning of the ADA that Million Air allegedly perceived him to have. *See Bailey v. Georgia-Pac. Corp.*, 306 F.3d 1162, 1169 (1st Cir. 2002) ("A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of* the ADA").

necessity' must, at minimum, be limited to an evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness for the work at issue." *Tice*, 247 F.3d at 515.

In this case, Bustillo has admitted that airplane pilots work in positions that affect public safety, that a pilot is prohibited from flying if he is suffering from a mental or physical condition that would disqualify him to fly, that a medical examination to ensure a pilot is fit to fly is "directly related" to the job, and that employers of pilots (like Million Air) are responsible for ensuring that their pilots are fit to fly. POSF ¶¶ 235, 236, 240, 242. Notwithstanding these admissions, Bustillo argues that he "rightfully requested a limitation to the scope of the medical examination." Docket No. 86 at 14. Because the limitation Bustillo sought to impose on the independent medical examiner—that no medical or psychological information was to be disclosed to Million Air—would prevent Million Air from receiving information on matters directly related to Bustillo's ability to perform safely the job of an airplane pilot, Bustillo's argument lacks merit. *See Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d Cir. 2003) (Business necessities that permit an independent medical examination "may include ensuring that the workplace is safe and secure."). And while Bustillo also contends that Million Air "did not limit the scope of the examination," he does not elaborate on the respects in which the requested medical examination was overbroad. Docket No. 109 at 4. Thus, summary judgment in Million Air's favor is granted on Bustillo's ADA claims.[9]

## II. ADEA

Bustillo has brought four claims under the ADEA, alleging a discriminatory termination, a hostile work environment, retaliation, and disparate treatment.

---

[9] While Bustillo also includes a half-page statement on the framework for an ADA retaliation claim, he makes no argument as to why he is entitled to summary judgment on that claim. *See* Docket No. 86 at 12; Docket No. 109 at 4. Nor does he develop an argument for entering summary judgment in his favor for the ADA discrimination claim. *See* Docket No. 86 at 12; Docket No. 109 at 4.

Case 3:14-cv-01420-BJM   Document 160   Filed 07/26/16   Page 10 of 17

Bustillo-Formoso v. Million Air San Juan Corp. et al., Civil No. 14-1420 (BJM)                    10

### A.     Discrimination

Bustillo contends he was terminated on account of his age. Docket No. 86 at 7. "In a wrongful discharge case under the ADEA, the plaintiff bears the burden of proving that her age was the 'determinative factor' in her discharge, that is, that she 'would not have been fired but for [her] age.'" *Del Valle-Santana v. Servicios Legales De P.R., Inc.*, 804 F.3d 127, 129 (1st Cir. 2015), *cert. denied*, No. 15-9091, 2016 WL 1682756 (U.S. June 27, 2016). In the absence of direct evidence of discrimination, the "plaintiff must first make out a prima facie case for age discrimination by showing that (i) she was at least 40; (ii) her work was sufficient to meet the employer's legitimate expectations; (iii) her employer took adverse action against her; and (iv) either younger persons were retained in the same position upon her termination or the employer did not treat age neutrally in taking the adverse action." *Del Valle-Santana*, 804 F.3d at 129–30.

If the employee's prima facie case is satisfied, a "rebuttable presumption of discrimination" arises and "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for dismissing the employee." *Id.* at 130. "If the employer does so, the presumption vanishes and the burden shifts once again. This time, the plaintiff is required to show that the employer's proffered reason is but a pretext, and 'that age was the but-for cause of the employer's adverse action.'" *Id.* (quoting *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447–48 (1st Cir. 2009)).

In this case, Million Air concedes that Bustillo was at least 40 and that Bustillo suffered an adverse action when his employment was terminated in November 2012. Docket No. 82 at 8. Million Air contends, however, that Bustillo is unable to establish the other two elements of his prima facie case. *Id.* Million Air also argues that it fired Bustillo for a legitimate business reason unrelated to his age: Bustillo's refusal to submit to an independent medical examination prevented Million Air from allowing him to fly, required Million Air to find another pilot to fly the ready-to-use Cheyenne II, and imposed additional costs on Million Air. Docket No. 82 at 9–15.

Even assuming Bustillo could establish a prima facie case of age discrimination under the ADEA, he has failed to present sufficient evidence from which a reasonable jury could find that Million Air's legitimate business reason for terminating him was a pretext for age discrimination. *See Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014) ("it is 'expeditious and appropriate' to assume prima facie case was made where primary focus of dispute [is] whether proffered reasons for termination were pretextual") (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010)). To resist summary judgment, Bustillo argues that "[t]here has been: suspicious timing, ambiguous statements, behavior toward or comments directed at others in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Docket No. 109 at 2. These conclusory arguments do not hold water at this stage of the proceedings, for "a party resisting summary judgment . . . must identify and allege specific facts showing a genuine issue for trial." *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 6 (1st Cir. 1994).

And while Bustillo claims that he was reassigned to a Cheyenne II while younger pilots were being trained for a G-200 that Million Air was expecting, this claim mischaracterizes the record evidence. Docket No. 86 at 6–7. The record evidence, even when read in the light most favorable to Bustillo, reveals that Menda sold the G-200 in May 2012. After that G-200 was sold, it is undisputed that Million Air did not have another G-200 in its fleet until late November 2012. And while Lay, the purchaser of the G-200 II, had informed Hill that he was considering the possibility of purchasing a G-200, Lay had also notified Hill from June to November 2012 that he was unsure whether he would actually purchase the airplane. Without a G-200 for Bustillo to fly, and without Bustillo having the necessary qualifications in June 2012 to fly an airplane in which a pilot position was vacant, Million Air asked Bustillo to use his accumulated vacation time. Upon his return in September 2012, Bustillo was assigned to the new airplane Million Air received that month—the Cheyenne II.

Case 3:14-cv-01420-BJM   Document 160   Filed 07/26/16   Page 12 of 17

Bustillo-Formoso v. Million Air San Juan Corp. et al., Civil No. 14-1420 (BJM)                                12

Moreover, while Bustillo suggests that he perceived himself as fit to fly and so Hill's decision to require an independent medical examination was unsound, these points do not establish pretext. *See Ponte v. Steelcase Inc.*, 741 F.3d 310, 323 (1st Cir. 2014) (to show pretext, it is insufficient for "a plaintiff to 'impugn the veracity' of the employer's proffered reason"); *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 177 (1st Cir. 2008) ("If there is no proof of discriminatory animus on the part of a decisionmaker, a plaintiff must show more than that the decisionmaker's perception was incorrect"); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits-or even rationality-of employers' nondiscriminatory business decisions.").

And even if Castellanos's single remark (i.e., that Bustillo could "not carry the bags" because he was a "senior citizen") were considered in this context, the probativeness of this remark is quite circumscribed because it was not made by the person who decided to terminate Bustillo (i.e., Hill), and because Bustillo is unable to identify the approximate date when the remark was made. *See Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir. 2001) (while "'stray remarks' may be *material* to the pretext inquiry, their *probativeness is circumscribed* if they were made in a situation temporally remote from the date of the employment decision, or . . . were not related to the employment decision in question, or were made by nondecisionmakers") (internal quotations omitted). Because Bustillo has proffered insufficient facts—supported by evidence—that would allow a reasonable jury to find that Million Air's reason for firing him was pretextual, summary judgment is granted for Million Air on the ADEA discriminatory termination claim.

### B.     Retaliation

The complaint alleges that Bustillo was terminated for engaging in protected conduct. Docket No. 1 at 20. An ADEA retaliation claim that rests on indirect evidence follows "the same framework" used to assess an age discrimination claim, "'albeit with

slight modifications' to account for the retaliation claim's distinct focus." *Soto-Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 30 (1st Cir. 2015) (quoting *Mesnick*, 950 F.2d at 827). To establish a prima facie case of retaliation under the ADEA, a plaintiff must show that "(i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." *Soto-Feliciano*, 779 F.3d at 30. "If the plaintiff makes a prima facie showing of impermissible retaliation, then, at the second stage, as in the discrimination context, the burden of production shifts to the defendant. To meet that burden, the defendant must offer a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the defendant does so, "then the inquiry moves to the third and final stage. At this stage, 'the plaintiff must assume the further burden of showing that the proffered reason is a pretext calculated to mask retaliation.'" *Id.* at 30–31 (quoting *Harrington v. Aggregate Indus.–Ne. Region, Inc.*, 668 F.3d 25, 31 (1st Cir. 2012)).

In this case, while Million Air conceded that Bustillo has suffered an adverse action, Bustillo made no effort to identify the protected conduct in which he engaged. And while the record undoubtedly reveals that he engaged in protected activity by filing at least one discrimination charge with the ADU, Bustillo does not develop an argument for a causal connection. Bustillo's reference to "suspicion timing" in his brief might refer to an argument about the temporal proximity between his protected conduct and his termination, but Bustillo does not develop that specific argument in either his motion for summary judgment or his opposition. Docket No. 109 at 2.

His failure to do so is particularly troublesome in this case because there are arguably three protected activities—the September 18 ADU charge, the October 10 ADU charge, or the October 23 ADU charge—which could buttress the temporal-proximity calculus in Bustillo's alleged retaliatory termination. *See, e.g.*, *Jones v. Bernanke*, 557 F.3d 670, 680 (D.C. Cir. 2009) (parties litigated the protected activity that provided the starting point for the temporal-proximity calculus). Because Bustillo has failed to develop

an argument for his ADEA retaliation claim, summary judgment is granted for Million Air on this claim.

To be sure, even if Bustillo had established a prima facie case of retaliation under the ADEA, summary judgment would still be appropriate because Million Air has tendered a legitimate, nonretaliatory reason for his termination and Bustillo has failed to proffer sufficient facts from which a reasonable jury could find that Million Air's proffered reason is a pretext for retaliation. *See Soto-Feliciano*, 779 F.3d at 32 (where the employer's legitimate, nonretaliatory reason "is the same one" given in response to the plaintiff's prima facie showing of age discrimination, the "issue comes down, once again, to pretext and the true motivation for" the adverse action).

    C.    **Hostile Work Environment**

Bustillo claims he was subjected to an age-based hostile work environment. The First Circuit has "recognized hostile work environment claims under the ADEA." *Collazo v. Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008) (citing *Rivera–Rodriguez v. Frito Lay Snacks Caribbean*, 265 F.3d 15, 24 (1st Cir. 2001)). "To prove a hostile-work-environment claim, a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Rivera–Rodriguez*, 265 F.3d at 24 (internal quotations omitted). "When assessing whether a workplace is a hostile environment, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.*

In this case, Bustillo cites to a single remark made by Castellanos, Million Air's Chief of Operations: that Bustillo could not "carry the bags" because he was a "senior citizen." Even if this remark was in bad taste, the single and isolated remark, which can reasonably be characterized as teasing, was insufficient to create a hostile work

environment. *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (internal citation and quotations omitted). And while Bustillo also claims that his firing, failure to promote, and other discrete acts created a hostile work environment, claims based on discrete acts are "different in kind" from hostile work environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Johnson v. Univ. of P.R.*, 714 F.3d 48, 53 (1st Cir. 2013) ( "Discrete acts and hostile work environment claims are 'different in kind,' because hostile work environment claims by their nature involve repeated conduct and a single act of harassment may not be actionable on its own.") (internal citations omitted); *Davila-Feliciano v. P.R. State Ins. Fund Corp.*, 754 F. Supp. 2d 351, 365 (D.P.R. 2010) ("discrete acts [are] not components of a hostile work environment"). Thus, summary judgment is granted on Bustillo's ADEA hostile work environment claim.[10]

### III. State-Law Claims

Bustillo claims Million Air violated Puerto Rico Law 44, P.R. Laws Ann. tit. 1, § 501 *et seq*; Puerto Rico Law 100, P.R. Laws Ann. tit. 29, § 146 *et seq.*; and Puerto Rico Law 115. P.R. Laws Ann. tit. 29, § 194 *et seq.* In support of these claims, Bustillo relies on the same arguments he made for the ADA and ADEA claims. Docket No. 86 at 14.

Law 44 is "Puerto Rico's counterpart to the ADA." *Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 175 (D.P.R. 2008); *see also Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 74 n.8 (1st Cir. 2002) ("Law 44 claim . . . is coterminous with [an] ADA claim") (citing *Acevedo Lopez v. Police Dep't of P.R.*, 247 F.3d 26, 29 (1st Cir. 2001)). Because "the elements of proof for a claim under Law 44 are essentially the

---

[10] While Bustillo provides a short rule statement for the ADEA disparate treatment claim, he fails to develop an argument for that claim. Docket No. 86 at 7–8. Accordingly, the ADEA disparate treatment claim is also dismissed.

Bustillo-Formoso v. Million Air San Juan Corp. et al., Civil No. 14-1420 (BJM)                    16

same as those for establishing a claim under the ADA," *Salgado–Candelario*, 614 F. Supp. 2d at 175, and because summary judgment is appropriate as to Bustillo's ADA claim, the Law 44 claim is also dismissed. *See Gonzalez*, 304 F.3d at 74 n.8.

Law "100, like the ADEA, 'provides a cause[ ] of action in favor of those persons who suffer discrimination in their employment because of their age. However, [the statutes] differ with regard to the burden[s] of proof that they impose upon the employer and the employee,' under certain circumstances." *Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d 17, 27 (1st Cir. 1998) (quoting *Soto v. Hotel Caribe Hilton*, No. RE–93–603, ––– P.R. Dec. ––––, ––––, 1994 WL 909663, at 4 (Oct. 17, 1994)). "The most important difference between Law 100 and the ADEA is that when the Law 100 presumption has been triggered, it shifts not only the burden of production, but also the burden of persuasion, from the employee to the employer." *Alvarez-Fonseca*, 152 F.3d at 27. But even under the Law 100 framework, the "Law 100 plaintiff is . . . in [the] same situation as an ADEA plaintiff after the defendant has articulated a legitimate, non-discriminatory reason for its actions." *Id.* As discussed within the context of Bustillo's ADEA claims, Million Air has articulated a legitimate business reason for firing Bustillo that is neither retaliatory nor related to his age. Because Bustillo relies on the same arguments he made for his ADEA claims, and because summary judgment was granted on those claims, the Law 100 claim is also dismissed.

The "analytical principles" for a Law 115 claim and an ADEA claim "are substantially the same." *Mojica v. El Conquistador Resort & Golden Door Spa*, 714 F. Supp. 2d 241, 262 (D.P.R. 2010) (summary judgment denied on both Law 115 claim and ADEA claim). Because summary judgment is appropriate as to Bustillo's ADEA retaliation claim, it is also appropriate as to his Law 115 claim

## CONCLUSION

For the foregoing reasons, Million Air's motion is **GRANTED**, and Bustillo's motion is **DENIED**. All claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of July 2016.

                                        *S/ Bruce J. McGiverin*
                                        BRUCE J. MCGIVERIN
                                        United States Magistrate Judge